UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEVEN MILLS,

      Petitioner,

v.                             Case No. 8:05-cv-00456-T-17MSS

JAMES R. MCDONOUGH[1],

      Respondent.

_____/

## ORDER

    This cause is before the court upon Petitioner Steven Mills's ("Mills") Amended

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.[2]  (Dkt. 6).  Mills

challenges his 2001 conviction entered by the Sixth Judicial Circuit Court, Pinellas County,

Florida.  Respondent has filed a response to the petition (Dkt. 10), and Mills has filed a

reply thereto (Dkt. 13).

### Background

    On February 15, 2001, Mills was charged by Information with one count of robbery.[3]

---

[1] In his petition, Mills names James V. Crosby, Jr., former Secretary of the Department of Corrections, as the party respondent in this case.  As of the date of this order, James R. McDonough is the Secretary of the Department of Corrections.  Accordingly, pursuant to Rule 25 of the Federal Rules of Civil Procedure and Rule 2 of the Rules Governing Section 2254 Cases, the Court will substitute McDonough as Respondent.  *See* Fed. R. Civ. P. 25(d); Rule 2(a), Rules Governing Section 2254 Cases (2006).

[2] Mills signed his original § 2254 petition on March 4, 2005.  (Dkt. 1).  By order entered on March 15, 2005, the Court dismissed the petition without prejudice and directed Mills to file an amended petition that complied with the instructions on the § 2254 form, contained a brief statement of facts supporting his claims, and contained the applicable dates required by the form.  (Dkt. 3).  Mills signed his amended § 2254 petition on August 18, 2005, and it was received by the Court on August 24, 2005.  (Dkt. 6).

[3] Mills was convicted of robbing an ABC Fine Wine and Spirits store located in Largo, Florida.

(Dkt. 11, Ex. 1, Vol. I, p. 6).[4]  Mills proceeded to jury trial on November 20, 2001, and was found guilty. (Id. at p. 14).  The state trial court sentenced him as a habitual felony offender to a term of thirty years imprisonment. (Id. at pp. 11, 47).  Mills, through counsel, pursued a direct appeal. (Id. at pp. 54, 59).  The state district court of appeal per curiam affirmed Mills's conviction on December 20, 2002, in Case No. 2D01-5647.  (Dkt. 11, Ex. 4). *See Mills v. State*, 838 So.2d 1159 (Fla. 2d DCA 2002) [Table].  Mills filed a motion for rehearing/clarification which was denied by the state district court of appeal on January 28, 2003. (Dkt. 11, Ex. 5).  The mandate issued on February 25, 2003. (Dkt. 11, Ex. 6).  Mills did not file a petition for writ of certiorari in the United States Supreme Court.

On January 6, 2003[5], Mills, proceeding *pro se*, filed a motion to correct illegal sentence pursuant to Fla. R. Crim. P. 3.800(a). (Dkt. 11, Ex. 7).  The state trial court denied the motion by order dated January 17, 2003. (Dkt. 11, Ex. 8).  Mills appealed that decision which was per curiam affirmed by the state district court of appeal on April 25, 2003, in Case No 2D03-654. (Dkt. 11, Ex. 12). *See Mills v. State*, 848 So.2d 320 (Fla. 2d DCA 2003) [Table].  He filed a motion for rehearing which was denied by the state district court of appeal on May 29, 2003.[6]  The mandate issued on June 16, 2003.

---

[4] The page numbers cited are those found at the bottom center on the pages compiled in Exhibit 1.

[5] For purposes of calculating the limitations period under the AEDPA, the Court will give Mills the benefit of the "mailbox rule" and consider his § 2254 petition and documents related thereto as "filed"on the date Mills signed and delivered them to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999). The Court will also give Mills the benefit of this rule with respect to his state court filings when calculating the limitations period under § 2244(d).

[6] A review of the online docket of the Florida Second District Court of Appeal in Case No. 2D03-654 shows that the original order denying the motion for rehearing was docketed on May 29, 2003. An amended order denying the motion for rehearing was entered on June 9, 2003. *See* http://199.242.69.70/pls/ds/ds_docket?p_caseyear=2003&p_casenumber=654&psCourt=2&psSearchType=.

2

On November 20, 2003, Mills, proceeding *pro se*, filed a motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850. (Dkt. 11, Ex. 16).  The state trial court denied this motion on March 11, 2004.  (Dkt. 11, Ex. 17).  Mills then filed a motion for rehearing on March 22, 2004, which was denied by order dated April 6, 2004.  (Dkt. 11, Ex. 19).  He appealed this denial to the state district court of appeal which affirmed the denial on September 29, 2004, in Case No. 2D04-2039.  (Dkt. 11, Ex. 23).  *See also Mills v. State*, 887 So.2d 343 (Fla. 2d DCA 2004) [Table].  On October 1, 2004, Mills filed a motion for rehearing which was denied on October 21, 2004.  (Dkt. 11, Ex. 25).  The mandate issued on December 8, 2004.  (Dkt. 11, Ex. 26).

The instant amended *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 was signed on August 18, 2005, and presented to prison authorities for mailing on August 19, 2005.  (Dkt. 6).  *See supra*, ftnt. 2.  The petition is timely.  Upon review of the record, Mills's petition must be DENIED.

### Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

3

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). "The 'contrary to' and 'unreasonable application' clauses of § 2254(d)(1) are separate bases for reviewing a state court's decisions." *Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000)). A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. *See Jones v. McDonough*, 2007 WL 174442 at *1 (11th Cir., Jan. 24, 2007); *Putnam*, 268 F.3d at 1241. A state court makes an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of a petitioner's case, or unreasonably extends or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. *See id.* "[A] federal habeas court may not issue the writ under the reasonable application clause simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that

4

application must also be unreasonable." *Williams*, 529 U.S. at 411. An "unreasonable application" is an "objectively unreasonable" application." *Putnam*, 268 F.3d at 1241.

State courts need not explain their merits rulings to qualify for deference under the AEDPA. *Jones*, 2007 WL 174442 at *2. Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec.'y for the Dep't of Corr.*, 278 F.3d 1245, 1255 (11th Cir. 2002). "All that is required under § 2254(d)(1) is an adjudication on the merits, not a full state court opinion." *Parker v. Secy for the Dep't of Corr.*, 331 F.3d 764, 776 (11th Cir. 2003). "Even a summary, unexplicated rejection of a federal claim qualifies as an adjudication entitled to deference under § 2254(d)(1)." *Herring v. Sec'y for the Dep't of Corr.*, 397 F.3d 1338, 1347 (11th Cir. 2005). Finally, a state court's factual findings are presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

Since Mills's conviction was entered after the AEDPA was enacted, his petition is subject to the provisions thereof. Because a state court initially considered the issues raised in the petition, § 2254(d) governs the review of Mills's claims. *See Mobley v. Head*, 267 F.3d 1312, 1316 (11th Cir. 2001).

### Standard for Ineffective Assistance of Counsel Claims

Mills raises four claims of ineffective assistance of counsel in the instant petition. The Sixth Amendment protects a defendant's right to the effective assistance of counsel during criminal proceedings against him. To prevail on a claim of ineffective assistance of counsel, Mills must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466

5

U.S. 668 (1984). First, he must demonstrate that his attorney's "representation fell below an objective standard of reasonableness" considering the circumstances as they existed at the time of representation. *Id.* at 687-88. This requires him to overcome a strong presumption that his attorney's performance was within the range of competence demanded of attorneys defending criminal cases. *Id.* at 689. Second, even if Mills can show that counsel performed incompetently, he must also show that he was prejudiced in such a manner that, but for counsel's errors, there exists a reasonable probability that the outcome of the proceeding would have been different. *Id.* at 688, 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings. *Id.* at 694.

In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." *Van Poyck v. Fla. Dept. of Corrections,* 290 F.3d 1318, 1322 (11th Cir. 2002) *(citing Chandler*, 218 F.3d at 1315). Counsel's trial strategy cannot be second guessed, as "judicial scrutiny of counsel's performance must be highly deferential." *Chandler,* 218 F.3d at 1314 (*quoting Strickland,* 466 U.S. at 689). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir.

6

1983).  Moreover, where the record is incomplete or unclear about counsel's actions, it is presumed that counsel exercised reasonable professional judgment.  As counsel's trial strategy is presumptively reasonable, the determination is not "that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not do a specific act." Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Chandler,* 218 F.3d at 1314-15.

As set forth below, in rejecting Mills's claims on the merits, the state trial court applied the *Strickland* standard of review for ineffective assistance of counsel claims.  Thus, to establish that he is entitled to relief on these claims pursuant to § 2254, Mills must establish that the state trial court incorrectly applied the *Strickland* standard in reaching its determination that these claims lack merit.  *See Parker,* 331 F.3d at 766.

## Discussion

### Ground One

Mills alleges that his trial attorney was ineffective in "failing to act on a suggestive identification procedure by motioning the court for suppression."  Mills contends that prior to her identification of him as the perpetrator of the robbery, Carol Mengel, an employee of ABC Fine Wine and Spirits who was working at the time of the robbery, was informed by police officers that they had a suspect that they had been watching in relation to several other robberies committed in the same local area and that they believed it was the same individual who robbed her store.  Mills asserts that this fact demonstrates that the identification procedure was highly suggestive and counsel should have moved to suppress both the out-of-court and in-court identifications.

7

Mills raised this claim in his Rule 3.850 motion for post-conviction relief.[7] In its order denying relief, the state trial court found as follows with respect to this claim:

> Defendant next claims that his counsel was ineffective for failing to move to suppress an out-of-court and in-court identification of Defendant by Carol Mengel. See Motion, p. 9. Defendant argues that Ms. Mengel, one of the clerks in the liquor store robbed by Defendant, was taken by law enforcement to where Defendant was being held approximately two (2) hours after the crime. See Motion, p. 10. Ms. Mengel could not identify Defendant as the robber from where she was seated in the police car, so she was then presented with a polaroid [sic] photo of Defendant, whom law enforcement identified as a suspect in several local robberies. [FN 2]. See Motion, p. 14. Ms. Mengel used her finger to cover up the top of Defendant's head in the picture to mimic the hat that she had seen the robber wearing. Ms. Mengel then identified Defendant as the robber. Defendant claims that all of these procedures were suggestive and that they tainted the subsequent in-court identification.

>> [FN 2] Defendant mischaracterizes the trial testimony by stating that Ms. Mengel could not identify Defendant while seated in the police car. She clearly stated that her view of him was obstructed and that she was afraid to leave the car, thus prompting the photo identification. See T. 14.

> Defendant has failed to demonstrate that the "show-up" identification procedure resulted in a substantial likelihood of irreparable identification. {See EXHIBIT D - Trial Transcript, T. 5-28.}; See Lassiter v. State, 858 So.2d 1134, 1136 (Fla. 5th DCA 2003) ("The factors to be considered in evaluating the likelihood of irreparable misidentification include: the opportunity of the witness to view the criminal at the time of the crime; the degree of attention paid by the witness; the accuracy of the prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation."); See also Perez v. State, 648 So.2d 715, 718-19 (Fla. 1995). Ms. Mengel's testimony established that she had an extended opportunity to view the robber and that she had paid specific attention to him as she believed that he might have been shoplifting as he milled about the store prior to the robbery. See. T. 7-8. While he was robbing the store, Ms. Mengel was in close proximity to Defendant.

---

[7] In Claim Two of his Rule 3.850 motion, Mills raised the following claim:

Defense counsel's failure to motion the trial court pretrial to suppress out-of-court identification and the subsequent in-court identification based upon the impermissible suggestive procedure conducted by police officers amounts to the Sixth Amendment denial of effective assistance of counsel where said procedure denied defendant of his right to due process by the Fourteenth Amendment.

(Dkt. 11, Ex. 16).

8

See T. 8-9.  Ms. Mengel appeared quite confident in her initial and later identification.  See T. 15, 19-20.  Detective Steven McMullen related that ms. Mengel had said that she was almost 100 percent sure of her identification from the polaroid [sic].  See T. 63-4.  Considering the <u>Lassiter</u> factors, counsel's performance was not deficient as there is every indication that a motion to suppress would have been denied.  See <u>Vathis</u>, 859 So.2d at 518.

However, even if counsel's performance were deficient, Defendant suffered no prejudice.  Defendant's counsel had Ms. Mengel step down and demonstrate to the jury exactly how she covered up the photo.  See T. 26-7.  Counsel also thoroughly discussed the identification in closing and suggested that it should be given little weight. [FN 3].  See T. 148-52, 158-9.  As a result of counsel's efforts, the jury was presented with more than enough information to give the identification its due weight and therefore any chance of prejudice was mitigated.  See generally <u>Brown v. State</u>, 846 So.2d 1114, 1123 (Fla. 2003) (Finding that failure to object to a witness's statement was adequately countered by counsel's cross-examination).  Defendant's claim is denied.

> [FN 3] Counsel also discussed the suggestive nature of the identification proceudure [sic] in his post-verdict motion for new trial/judgment notwithstanding the verdict. {See EXHIBIT E - Transcript of Hearing}.

Dkt. 11, Ex. 17).  A review of the record supports the state trial court's finding.

At trial, Mengel testified on direct examination, in relevant part, as follows:

MR. MIGLIORE[8]:   At some point, you were interviewed?

MS. MENGEL:   Yes.

MR. MIGLIORE:   And did you give the police officers a statement as to what it was that happened?

MS. MENGEL:   Yes, I did.

MR. MIGLIORE:   Ma'am, later on that same morning were you asked to get in the back of a police cruiser to go some where [sic]?

MS. MENGEL:   Yes, I was.

MR. MIGLIORE:   Ma'am, what was it that you were told you were being asked to do by the police officer at that time?

---

[8] At trial, the State was represented by Assistant State Attorney Frank Migliore.

| MS. MENGEL: | They said they had someone that they suspected was the individual who had been in the store, who perpetrated this robbery. |
|---|---|
| MR. MIGLIORE: | Okay.  And did you go several blocks away? |
| MS. MENGEL: | Yes. |
| MR. MIGLIORE: | Did you get out of the back of the police cruiser? |
| MS. MENGEL: | No. |
| MR. MIGLIORE: | Were you able to get a good look at this individual from the cruiser? |
| MS. MENGEL: | No, I couldn't because there's a mesh across the back of the – in the backseat and I couldn't see through it, so I told them at that point that I couldn't possibly see him. |
| MR. MIGLIORE: | Okay.  Were you fearful of getting out at that point? |
| MS. MENGEL: | Yes. |
| MR. MIGLIORE: |  And did the officers take a photograph? |
| MS. MENGEL: | Yes, they took a polaroid [sic] photo of him? [sic] |
| MR. MIGLIORE: | Did they show it to you? |
| MS. MENGEL: | Yes, they did. |
| MR. MIGLIORE: | Were you able to tell the officers whether or not the person in the photograph was the same person you described here in your testimony as the person who robbed the store? |
| MS. MENGEL: | Yes. |
| MR. MIGLIORE: | What did you tell them? |
| MS. MENGEL: | I said – actually he had changed his clothing and taken off the baseball cap, but when the photograph came to me and I put my hand over it I could see that it was the same individual I had seen earlier in the day. |

(Dkt. 11, Vol. II, pp. 13-15).  As the state trial court pointed out, counsel also thoroughly

10

addressed the identification issue again in his closing argument and attempted to focus the

jury's attention on the weight, or lack thereof, to be given to Mengel's identification of Mills.

(Dkt. 11, Ex. 1, Vol. II, pp. 148-52).

Finally, in his motion for new trial, counsel again argued the suggestive nature of

Mengel's identification of Mills. Specifically, counsel argued at the hearing on the motion

for new trial as follows:

> Your Honor, I've of course, filed my motion for a new trial judgment notwithstanding
> the verdict. Based generally on my view that the verdict was contrary to the law and
> evidence more specifically and without going over every item of evidence, I suspect
> that Your Honor remembers fairly well the testimony and the circumstances of this
> case. First of all, the evidence, but for one fact I believe was mostly, if not virtually
> purely circumstantial evidence. It was a case in which there were no fingerprints
> connecting him to the scene. There were footprints taken and examined, which
> were not identified to the defendant. He was identified solely by one of the victims.
> The second one, one of the victims actually couldn't identify him when looking at
> him. She can only do it by a Polaroid photograph taken at the scene. She had to
> cover up part of his head to make the identification. That is identification I
> understand in court identification [sic] but I am suggesting based upon all the
> circumstances and facts in evidence presented at trial that identification was rather
> suggestive and fairly suspect in terms of its essential reliability. So, I am suggesting
> number one, that the evidence is insufficient in order to permit the court to submit
> this case to the jury for resolution. From a law standpoint, I objected at trial and I
> again referred to those objections with regard to the admission of certain evidence
> in trial.

(Dkt. 11, Ex. 1, Vol. IV, pp. 191-193).[9]

Based on the foregoing, trial counsel clearly presented and squarely addressed the

identification issue at trial and in his post-trial motion. Mills does not present any evidence

to demonstrate, nor does he suggest, that a motion to suppress would have been

successful. Even assuming, *arguendo*, that trial counsel's failure to attack the identification

---

[9] Respondent has filed with its response the four-volume record on direct appeal from the state district
court of appeal. (Dkt. 11, Ex. 1, Vols. I-IV). The page numbers of references in Volume IV are designated
by the page numbers located in the bottom right-hand corner of the page.

procedure via a motion to suppress as Mills now suggests was somehow deficient, Mills has not shown that such failure prejudiced him in any way such that the jury would not have convicted him. *See Strickland*, 466 U.S. at 694. Mills has failed to establish that the state trial court's denial of this claim of ineffective assistance of trial counsel was contrary to or an unreasonable application of the *Strickland* standard or resulted in a decision that is based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Therefore, Mills is not entitled to federal habeas relief on this claim.

**Ground Two**

In Ground Two of the instant § 2254 petition, Mills claims his trial attorney was ineffective in failing to impeach Mengel with her prior statement made in her deposition and in failing to relay facts to the jury to "less[e]n the suggestive identification procedure." Mills contends that Mengel stated during her deposition that police officers did not inform her that they had the person who committed the robbery. He alleges that at trial, Mengel testified that police officers did inform her that they had a suspect whom they believed was in her store and committed the robbery.

Mills raised this claim in his Rule 3.850 motion for post-conviction relief.[10] In its order denying relief, the state trial court found as follows with respect to this claim:

> Defendant next argues that he was denied the effective assistance of counsel when his counsel failed to impeach Carol Mengel in regard to the "show-up" identification. Specifically, Defendant believes his counsel inadequately impeached the witness

---

[10] In Claim Three of his Rule 3.850 motion, Mills presented the following claim:

Defense counsel's failure to impeach robbery victim and relay facts to jury in regards to unnecessarily suggestive procedures utilized by police officers by making known that out-of-court identification procedure was tainted was ineffective.

(Dkt. 11, Ex. 16).

both as to her statement that the police referred to Defendant as the perpetrator prior to her identification and as to the suggestive identification procedure. See motion, p. 21-8.

As to the first issue, Defendant claims that Ms. Mengel testified differently at trial than at her deposition. He argues that in her deposition, Ms. Mengel stated that the police referred to Defendant as someone they had been watching, but during direct examination at trial she states that the police referred to Defendant as the perpetrator. {See EXHIBIT F - Deposition of Carol Mengel, p. 8-10}; See T. 14. Defendant omits a key part of the trial transcript where his counsel, during cross-examination of Ms. Mengel, was able to have her clarify her earlier statement on direct. See T. 23. She then clearly stated that the police told her that they had someone they wanted her to look at and retreated from her earlier use of the word "perpetrator." See T. 23. Thus, there was no reason for counsel to use her deposition testimony to impeach her because her trial testimony was consistent with her deposition testimony. Any possible oversight on the part of counsel, as described by Defendant on page 25 of his motion, was minimal and there is no reasonable probability that the outcome of the trial could have been different if counsel had acted as Defendant suggests. See Allen, 854 So.2d at 1261. For these reasons, counsel's performance was not deficient and the Defendant suffered no prejudice. See Strickland, 466 U.S. at 687.

(Dkt. 11, Ex. 17). The record supports the state trial court's finding.

In her deposition, Mengel stated in relevant part:

MR. JOHNSON[11]:  When the police took you, and this is the last question here, last area I want to focus on. When the police took you to where they had this individual in their custody —

MS. MENGEL:  Yes.

MR. JOHNSON:  – what did they tell you before they took you on your way, did they say we've got this guy. Do you recall, remember?

MS. MENGEL:  Yes. They said they found someone that they had, they had been watching. And unknown to me there had been several other robberies in the area and I was unaware of this all, you know. I said, oh, well, you know, that's fine. It was of no consequence to me. I just said, okay, that's fine.

MR. JOHNSON:  But did they tell you we have the man who did the robbery or–

---

[11] Mills was represented at trial by attorney Bruce M. Johnson of the Public Defender's Office.

MS. MENGEL:     Well, no, not exactly.  No, they didn't say we have the man. They said we have someone that we have been watching, that's all they said.  They didn't say they had the person.  They said they had someone that they had been watching, that's all.

(Dkt. 11, Ex. 17).

On direct examination, Mengel testified:

MR. MIGLIORE:   Ma'am, later on that same morning were you asked to get in the back of a police cruiser to go some where [sic]?

MS. MENGEL:     Yes, I was.

MR. MIGLIORE:   Ma'am, what was it that you were told you were being asked to do by the police officer at that time?

MS. MENGEL:     They said they had someone that they suspected was the individual who had been in the store, who perpetrated this robbery.

(Dkt. 11, Vol. II, pp. 14).

On cross-examination, Mengel testified as follows:

MR. JOHNSON:    You said that at some point after the police arrive [sic] and after they spoke with you and Karen, and whoever else, for a period of time they indicated that they had someone that they suspected of being the perpetrator, in custody or at some place; is that what they told you?

MS. MENGEL:     No.  They said they had someone they wanted me to look at.

MR. JOHNSON:    You used the word suspect and perpetrator earlier in your testimony didn't you?

MS. MENGEL:     Well, they didn't tell me they had him.  They just said they had someone they wanted to – they had a suspected [sic] they wanted me to look at.

MR. JOHNSON:    And you did, but you couldn't see him from the cruiser?

MS. MENGEL:     No.

MR. JOHNSON:    And you never got out of the cruiser?

14

MS. MENGEL:      No.

MR. JOHNSON:     Was there any reason for that?

MS. MENGEL:      Well, I was still a little frightened from his – from when I had seen him before.

MR. JOHNSON:     So you stayed in the cruiser?

MS. MENGEL:      Yes, I did.

(Dkt. 11, Ex. 1, Vol. II, p. 10).

As the state trial court pointed out in its order denying this claim of Mills's Rule 3.850 motion, on cross-examination, counsel clarified Mengel's statements made on direct examination with regard to her recollection of the term used by police to refer to Mills prior to the on-scene identification.  Mengel's trial testimony was consistent with her deposition testimony and thus there was no reason to use the deposition testimony to impeach her. Even assuming, *arguendo,* that such alleged failure by counsel to pursue the strategy Mills now describes amounted to deficient performance, he has made no showing that such actions prejudiced him in any way such that the jury would not have convicted him. *See Strickland*, 466 U.S. at 694. Mills has failed to establish that the state trial court's denial of this claim of ineffective assistance of trial counsel was contrary to or an unreasonable application of the *Strickland* standard or resulted in a decision that is based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Therefore, Mills is not entitled to habeas relief on this claim.

**Ground Three**

Mills contends his trial attorney was ineffective in failing to investigate and produce a forensic specialist at trial.  He asserts that shoe impressions left by the perpetrator were

15

lifted at the location of the robbery and that the impressions did not match his shoes. Mills

argues that "[t]he jury was never alerted to the significance surrounding the negative results

due to counsel's failure to investigate and produce the forensic specialist."

Mills raised this claim in his Rule 3.850 motion for post-conviction relief.[12] In its order

denying relief, the state trial court found as follows with respect to this claim:

> Defendant next argues that his counsel should have questioned the Florida
> Department of Law Enforcement (hereinafter FDLE) forensic specialist. See motion,
> p. 28-32. Defendant argues that the specialist should have been thoroughly
> questioned regarding the shoe prints taken at the scene of the crime. The report
> from the FDLE specialist described four (4) shoe prints taken form the scene and
> that they could not have come from the shoes obtained from Defendant. Defendant
> asserts that counsel should have questioned this specialist regarding the testing
> methods used.
>
> Counsel read a statement to the jury, stipulated to by both the defense and the
> State, that the FDLE report concluded that the shoe prints taken from the scene
> could not have been made by the shoes worn by Defendant on the day of the
> robbery. See T. 129-30. Defendant fails to identify any significant issues not raised
> by the stipulation or counsel's closing arguments that could have been better raised
> by examination of the FDLE specialist. See T. 156-7, 159.
>
> Defendant is reminded that, unlike the confirmation provided by a positive result, a
> negative result showing that he did not leave the prints [sic] collected by law
> enforcement does not prove that he was not in the store. For example, Defendant's
> shoes might not have left shoe prints or the shoe prints left by Defendant may not
> have been collected by law enforcement. As this information would likely have been
> presented to the jury upon examination of the expert by the State, it is probable that
> Defendant's case was more benefited [sic] by the un-rebutted statement that
> Defendant's shoes did not match the prints taken at the crime scene.
>
> Defendant has not demonstrated that there is a reasonable probability that the
> outcome of his trial would have been different had the FDLE specialist been a

---

[12] In Claim Four of his Rule 3.850 motion, Mills presented the following claim:

Defense counsel's failure to investigate and produce forensic specialist [sic] where exculpatory
evidence could have been produced for the jury's determination fell below the objective standard of
reasonableness demanded by the Sixth Amendment.

(Dkt. 11, Ex. 16).

witness at trial.  See Allen, 854 So.2d at 1261; Walton, 847 So.2d at 455-56. Defendant's motion is denied.

(Dkt. 11, Ex. 17).  A review of the record supports the state trial court's finding.

Prior to resting his case, Mills's counsel presented the following joint stipulation to

the jury:

| THE COURT: | All right. Mr. Johnson, you may publish the stipulation you've reached with the State. Ladies and gentlemen of the jury, after he publishes this stipulation you may consider it just as if it had come from the witness stand; Mr. Johnson. |
| --- | --- |
| MR. JOHNSON: | Thank you, your Honor.  May it please the Court; by stipulation the State Attorney and I have agreed to my submitting, or making the following statement, as you say, if as submitted by testimony in evidence.   And that stipulation is as follows: Ladies and gentlemen, you have heard from previous testimony from one of the officers that Mr. Mills's shoes that he was wearing that day and either photographs or impressions of footprints from the store were submitted to the Department of – or th[e] Florida Department of Law Enforcement for analysis or comparison. |
| | And again, by stipulation and an agreement, I'm going to read you one sentence from that report, the conclusion, and that is as follows: The footwear impressions could not have been made by the shoes submitted in Exhibit 1 due to different tread designs. |

(Dkt. 11, Ex. 1, Vol. II, pp. 129-30).

Clearly counsel presented to the jury the fact that Mills's shoes did not match the

prints/impressions taken from the crime scene.  The gravamen of Mills's claim appears to

be that counsel did not reinforce this point to the jury in the manner he feels it should have

been presented.   He does not provide any factual support in his petition or reply to

demonstrate that he is entitled to relief. See Hill, 474 U.S. at 52 (conclusory allegations

presented in support of an ineffective assistance of counsel claim are insufficient to raise

a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, or unsupported claims cannot support an ineffective assistance of counsel claim).   Mills has not demonstrated that counsel's decision to enter the stipulation rather than call the forensic specialist as a witness was anything other than trial strategy.   Disagreements by a defendant with tactics and/or strategies will not support a claim of ineffective assistance of counsel; a petitioner in habeas corpus must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy.   *See Norman v. Bradshaw*, 2006 WL 3253121at *10 (N.D. Ohio, Nov. 8, 2006) (*citing Strickland*, 466 U.S. at 689; *United States v. Perry*, 908 F.2d 56,59 (6th Cir. 1990)).

Even assuming, *arguendo,* that such alleged failure by counsel to pursue the strategy Mills now describes amounted to deficient performance, he has made no showing that such actions prejudiced him in any way such that the outcome of his trial would have been different.   "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."   *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).   In the absence of an allegation of prejudice, a claim of ineffective assistance of counsel cannot succeed because it does not satisfy the requirements of *Strickland.*   Based on the bare allegations presented to support this claim, the state trial court's rejection of the claim was a reasonable application of the *Strickland* standard.   Thus, Mills is not entitled to federal habeas relief on this claim.

**Ground Four**

In his final claim, Mills contends that the cumulative effect of counsel's errors as stated in Grounds One through Three of the instant petition rendered counsel's conduct

18

ineffective. Mills presented this claim in his Rule 3.850 motion for post-conviction relief.[13]

In its order denying relief, the state trial court found as follows with respect to this claim:

> This court has reviewed the issues presented and determines that cumulative error did not occur in this case. See Brown v. State, 846 So.2d 1114, 1126 (Fla. 2003) (Finding that cumulative effect argument fails where each individual claim of ineffective assistance is insufficient) (*citing* Bryan v. State, 748 So.2d 1003, 1008 (Fla. 1999)).

(Dkt. 11, Ex. 17) (emphasis in original).

Given the state trial court's findings that the aforementioned claims in Grounds One through Three of the instant § 2254 petition were meritless and did not entitle him to relief, there can be no cumulative effect of prejudice. Thus, the Court concludes that the state court's rejection of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law and relief on this final claim will likewise be denied.

Accordingly, the Court orders:

That Mills's petition for writ of habeas corpus is denied with prejudice. The Clerk is directed to enter judgment against Mills and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to

---

[13] In Claim Six of his Rule 3.850 motion, Mills presented the following claim:

The cumulative effect of counsel's deficiencies deprived Defendant of his fundamental guarantee by the Sixth Amendment to effective assistance of counsel, a fair trial and the Fourteenth Amendment guarantee to due process.

(Dkt. 11, Ex. 16).

19

appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on ___MARCH 8th___, 2007.


ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE


Counsel of Record
Steven Mills